Mr. Chief Justice Alvey
delivered the opinion of the Court:
There have been two principal questions argued upon this appeal: First, as to the jurisdiction of a court of equity to take cognizance of the case, frame issues for trial by jury in a court of law, and to pass a decree such as that appealed from. And, second, assuming the jurisdiction to exist, whether the decree was justified by the verdict and the facts found in the case.
1. Before the act of Congress of June 8, 1898, entitled “An act conferring on the Supreme Court of the District of Columbia jurisdiction to take proof of the execution of wills affecting real estate, and for other purposes,” the Supreme Court of this District, holding special terms for orphans’ court business, had no power or jurisdiction to receive proof of and to admit to probate a will or codicil as a devise of real estate. Campbell v. Porter, 162 U. S. 478. That act, however, has changed the law upon the subject; but it has declared that it shall apply only to wills and testaments thereafter offered for probate; provided that any person interested under any will theretofore filed in said court may offer the same for probate as a will of real estate, whereupon such proceedings shall be.had as by this act are authorized in regard to wills hereafter offered for probate. Section 8, act of Congress, June 8, 1898. This latter provision, of *248 course, does not apply to the case of a will and testament made and admitted to probate, as to the personal estate of tbe deceased, prior to the passage of the act of Congress, and where the heir at law takes proceedings, not to have the will admitted to probate, but to have what professes to be the will of the deceased, declared null and void as to the real estate of the deceased, since the passage of the act of Congress. If this case had originated under a will made since the passage of the act of Congress just referred to, the devisee could only claim by virtue of the probate of the will had under that act. The Supreme Court of the District, holding special sessions for orphans’ court business, has been given full and plenary jurisdiction over the subject of admitting or refusing probate of wills affecting real estate, just as in the case of wills and testaments affecting personal estate; and the judgment of that court can not be called in question in any collateral proceeding. It is given by the statute an exclusive jurisdiction over the matter of probate, subject, of course, to review on appeal. Act of Congress, sections 2, 3, 6 and 7; Case of Broderick’s Will, 21 Wall. 503; Allen v. McPherson, 1 Ho. L. Cas. 191.
But in the present case the paper purporting to be the will was made, and the party supposed to be the maker of it, died in 1896, before the act of Congress was passed; and the case, therefore, must be decided according to the law as it existed at the time of the death of the supposed testatrix, and when the paper was offered for probate as .to the personal estate.
As we'have seen, the title to the real estate owned by the deceased, and which is the subject of the alleged devise by the paper in question, was and is of a mere equitable character, or the mere right of an equity of redemption, the legal estate being vested in trustees. This equitable title, therefore, was not such as would, ordinarily, maintain an action of ejectment at law for the recovery of the land by the heir at law against parties claiming as devisees under *249 the alleged will of the deceased, the grantor in the deed of trust. Lincoln v. French, 105 U. S. 614; Brobst v. Brock, 10 Wall. 519; Morsell v. Nat. Bank, 91 U. S. 357; Van Ness v. Hyatt, 13 Pet. 298; Bank of Metropolis v. Guttschlick, 14 Pet. 19.
Seeing, then, that there was no jurisdiction in the probate court, and that an action of ejectment can only, as a general proposition, be maintained on a legal title, for the recovery of the land by the heir at law, it would seem to be clear beyond doubt that the remedy for the heir at law was by a bill in equity, for the purpose either of having the impediment to the right of maintaining an action at law removed or restrained, or of having issues framed and sent to a court of law for trial by a jury. Otherwise there might be a failure of justice for the want of a fit and proper remedy by which to attain it.
The English decisions are numerous by which bills have been maintained in cases like the present. And without undertaking to refer to them all, we shall refer to some few of the more recent and controlling of them. And the first to which we shall refer is the case of Pemberton v.. Pemberton, 13 Ves. 290. In that case the bill was filed by the sisters of the testator, claiming as co-heiresses at law, against the devisee of an equitable estate, and an issue, devisavit vel non, was directed, and which was tried in the common pleas, before Chief Justice Mansfield, and a verdict was found in favor of the will. Upon motion for a new trial, heard before Lord Eldon, the chancellor said: “This bill is rather new in principle. I have no doubt, that heirs at law, entitled to the estates, of which their ancestors were seised, though only in equity, and therefore not having the means of proceeding at law, may come into equity, merely to recover the possession of those estates, and to have the deeds delivered up. I will not say, that in some cases they may not apply to have a will delivered up as an instrument that ought not to vex their title; which, however, if it retains in it anything that has validity, ought not to be delivered up.' *250 But the course has been to file a bill, stating the reasons they can not bring an ejectment; such as mortgages, outstanding terms, etc., and in general cases this court, as it can not try the validity of a will, sends that to be determined by the proper tribunal; and afterwards does what is right.” These latter remarks have been explained or qualified in subsequent cases.
The next case that may be referred to is that of McGregor v. Topham, 3 Hare, 488, 496. That was a bill in equity filed on behalf of an heiress at law against a devisee, impeaching the validity of a will upon the ground of fraud and undue influence, and where the estate was equitable, and consequently no action of ejectment could be maintained. In that case there was an issue. devisavit vel non' sent to a court of law for trial, and the verdict was in favor of the respondent. The plaintiff, the heir at law, made a motion for a new trial, but the motion was refused by the vice chancellor, and the case was taken to the House of Lords on appeal, where the decree was affirmed. 3 Ho. L. Cas. 132. In that case, it was held by the House of Lords that though there may be an outstanding legal estate, which compels the heir at law to come into equity, he can not, on-that account, claim a right to have the issue tried a second time, if the court, in the exercise of its discretion, should deem the first verdict satisfactory. And, as we suppose, for the same reason, the party claiming as devisee could have no right to a second or new trial of the issue.
The next and last case to which we shall refer on this question, is that of Boyse v. Rossborough, 6 Ho. L. Cas. 2. That is a case of close analogy to the present in many of its facts, and is of the highest authority, as it was most elaborately argued both at the bar and by the lord chancellor in the decision of the case.
In that case, there were outstanding terms which formed an obstacle to the maintenance of ejectment at law for the *251 real estate in question, and the bill was filed by an heir at law against the devisee to impeach the will of the real estate as having been obtained by undue influence or fraud practiced upon the alleged testator. There was an issue devisavit vel non made up and sent to a court of law for trial, the defendant’s counsel not objecting. The issue was tried, and the verdict was against the will. Motion was made for a new trial, and was overruled; whereupon an order was made declaring the paper writing purporting to he the will, null and void as a devise of the real estate in the pleadings mentioned.
It was strongly argued on the part of the appellant, the devisee, that the course pursued by the court below in that case, that of granting an issue devisavit vel non on the application of the heir at law, in a suit instituted by him to impeach a will, was without justification in principle or precedent, and was contrary to the settled practice of courts of equity. That, according to the contention of counsel, when a devisee files a bill against an heir at law for the purpose of establishing a will, the heir at law has, no doubt, a right to an issue devisavit vel non, for the purpose of compelling the devisee to give full and clear proof of the will. But when the heir at law files a bill against a devisee impeaching a will of real estate, the heir at law has no right to such issue. It was, however, conceded by the counsel for the devisee, that if there should be such impediments to the heir trying his title at law as to prevent him from maintaining an action at law for that purpose, the ordinary course was then to file a bill in a court of equity to remove such impediments, and leave the heir to his legal remedy; and if the impediments are of such a kind as to prevent the court of equity from effecting that purpose; if the circumstances are such that the heir can not have relief at law in any other way, then, but then only, it may grant him an issue.
*252 But on the part of the appellee, the heir at law, it was insisted by counsel, that the proceedings that had taken place in the court below were entirely regular, and in perfect conformity with the principles and practice of the court of chancery. That in a bill by an heir at law, impeaching a will on grounds such as existed in that case, and where undue influence or fraud had produced what might be denominated the absence of a disposing mind, it was entirely within the discretion of the court either to grant an issue devisavit vel non or to leave the heir to proceed by ejectment, the court of equity simply removing out of his way all those technical obstacles which might prevent the decision of his legal title; that the court is not bound to adopt one of those courses in preference to the other, but may take either in its discretion.
This contention of counsel for the heir at law was supported to its full extent by the unanimous judgment of the House of Lords, the opinion being delivered by Lord Chancellor Cranworth. It was held, that a court of equity had full power, both on principle and precedent, to exercise its discretion either to direct an issue, devisavit vel non, or merely to remove obstacles out of the way of the heir at law asserting his legal title in an action at law. It was, moreover, held, that an appellate court will not interfere with the exercise of that discretion, unless it appears that injustice has been, or will likely be, the consequence.
In answer to the argument that was made in that case, that the consequences of the course that was taken by the court below was prejudicial or injurious to the devisee, although adopted with the sanction, if not at the suggestion, of the counsel of the devisee, the lord chancellor said:
“In order to come to a just conclusion on this point, let us consider what was the precise practical difference to the appellant from the adoption of the one course rather than the other. When on a bill, by an heir disputing a will, *253 nothing is done beyond the removal of the legal impediments, then the heir brings an action of ejectment against the party in possession claiming as devisee; and assuming the heirship of the plaintiff to be, as it was in this case, admitted, the defendant begins at the trial, and adduces his evidence in support of the will. The heir then meets this case by such evidence as he can bring to impeach the will. The defendant replies, and the jurymen give their verdict. Precisely the same thing happens on an issue devisavit vel non. So far, therefore, as the trial is concerned, it is of no importance which course is taken. Supposing the verdict to be against the will, and there is no motion for a new trial, then, if the proceeding was by ejectment, the heir obtains possession by virtue of a writ of habere facias possessionem. If the course taken was to direct an issue, then the court of chancery causes possession to be given to the heir. In either case the devisee is compelled to give up possession to the heir; and whether this result follows’ from one species of process or another can not be material. If the result of the trial is different, and the verdict is in favor of the devisee, then, whatever course was taken for the purpose of trying the validity of the will, the bill of the heir will be dismissed, and the devisee will retain possession.”
The question of the want of jurisdiction of equity, so much discussed at the bar in the argument of this case, is really not involved. It was only a question of discretion in the court below as to the manner of having the validity of the will tried; and the exercise of that discretion is not the subject of review, except where it is shown to be abused.
But in this case the parties made their own election as to how they would have the validity of the will tried. By solemn stipulation they agreed that issues should be formed and sent to a court of law for trial, and, upon the finding and verdict of the jury, that “ a decree should be entered in accordance with said findings,” subject to the right of appeal. The devisees, by their counsel, can not now be heard to *254 urge, with any judicial propriety, that their stipulation, after all the cost, labor, and delay incurred, consequent upon that stipulation, should be tr.eated as nugatory; that while they led the court to adopt a course, in its discretion, that it might-not have adopted but for that stipulation, they should not now, because the result has been adverse to their expectations, be allowed to repudiate their solemn agreement for the manner of conducting the case. Tliey must accept the result for the possibility of which they have stipulated.
2. With respect to the question, whether upon the facts the verdict of the jury ought to be sustained, we can not seriously entertain a doubt. The jury have passed upon the facts in the trial of the issues, and it is only where the court can see that a new or second trial of the issues is required to effectuate justice that a new trial will be granted. In this case no motion for a new trial was made to the court of equity upon the return of the verdict to that court, upon the issues formed by it. It was for that coui’t to say, whether the finding of the jury was satisfactory or not. The evidence taken at the trial of the issues would seem to have been eminently proper for the consideration of the jury. The justice before whom the issues were tried at law, as well as the justice in the court of equity, were entirely satisfied with the verdict. The trial in all respects seems to have been fairly conducted. The jury were fully and fairly instructed by the court, at the instance of the respective parties, and all the prayers offered by each side were granted, read, and fully explained to the jury. We can perceive no substantial ground upon which the verdict should be set aside, and a new trial upon the issues granted. As there was no other evidence in the case than that upon which the jury acted and based their verdict, if the court below was satisfied, as it appears to have been, that the verdict was the fair result and conclusion from that evidence, the court was certainly justified in accepting and adopting the verdict, and making it .the basis of . its decree. It would only be in a *255 case where an appellate court could plainly see from the facts of the case, that the verdict of a jury, upon issues in a case like the present, was not fairly supported by the facts, that a new trial of the issues would be granted, as against the order of the court below. In this case we perceive no such ground for a new trial. It follows that the decree must be affirmed, and it is so ordered. Decree affirmed.